The next case today is Johnson Controls Security Solutions, LLC v. Int'l Brotherhood of Electrical Workers, Local 103, appeal number 21-1460. Attorney Soros, please introduce yourself on the record to proceed with your argument. Good morning, your honors. May it please the court, I'm Christopher Soros. I'm counsel for the appellant, IBEW Local 103. May I reserve two minutes, please, for rebuttal? Yes, you may. Thank you. This court, in this case, must decide whether the union's grievance is arbitrable under an arbitration clause in a collective bargaining agreement. But before I turn to the clause itself, I think it's vitally important to understand the rules that govern this court's consideration of that issue. And in the Supreme Court's case, in the AT&T case, the court declared in unambiguous terms that a grievance must be considered to be arbitrable unless it can be said with positive assurance that the contract is not susceptible of an interpretation that legal standard is the phrase susceptible of an interpretation that covers the grievance. And I think that can only mean that it's not the only interpretation that's available, or even what the court might view as the right or a more plausible interpretation. But it's simply that the union's interpretation of the clause and the clause itself is merely susceptible to the union's interpretation. Or perhaps, in other words, that the union's interpretation is reasoned or colorable or plausible. Mr. Soros, as I understand it, you are saying in your brief that Judge Young violated that standard in at least two different ways. One, he did not actually utilize that standard. And two, he ignored the limitation on the exclusion from arbitration. Is that correct? That's correct, Your Honor. And so turning to the clause itself, we don't have an opinion from Judge Young, so we don't know exactly what his reasoning is. But in looking at the clause itself, the clause excludes disputes that are directly or indirectly involve the interpretation or the application of the 401, of the retirement plan. And we're dealing with the retirement plan here. And I think under the governing legal standard, the issue is not necessarily what do those limiting words mean, because those are clearly words that qualify and limit the scope of the exclusion clause. But the issue is what could they mean. And that issue has to be considered in the context of ERISA's mandatory claims and appeals procedures that govern retirement plans like the employer's plan here. And so we're dealing with two entirely different documents. Five minutes remaining. Thank you. There's a collective bargaining agreement and there's a summary plan description. And both of those two documents, each of those two documents has its own set of dispute resolution procedures. This court in the Diaz case used the very exact words that are used in the exclusion clause in this case to describe the routine benefit plan administration disputes that are covered by the plans, claims and appeals procedures. It makes perfect sense in that context, consistent with ERISA for the collective bargaining parties in the collective bargaining agreement to exclude those routine plan administration disputes from the collective bargaining agreements, grievance procedures. So it's entirely reasonable to conclude that the exclusion of disputes over the interpretation or application of the plan excludes only routine plan administration. I believe Judge Barrett. Mr. Soros, I check what you're saying, but it concrete. If your interpretation is a plausible one. What, on your view, do the words application and indirectly mean? Well, I think directly and indirectly qualify the words interpret, interpret and apply. And I think. So I guess what I'm saying is what is a circumstance in which indirectly and apply would have any meaning if we credit that this type of dispute. Would not. Be about the plan and would be about the agreement. Well, if I understand your question, your honor, I think. Disputes dealing with the application of the plan deal with whether they're direct or indirect deal with the terms of the plan itself. And they're not questions of interpretation. Well, their interpretations of them. You got to have a word. That's what I'm worried about. Interpretations already in there, so application must mean something different. So is there a question of plan administration that's not about interpretation of the plan? Well, I think the case is. The plan says I'm entitled to $300 a month in retirement benefits and the plan administrator sends me $200 a month. That's a dispute over the application of the terms of the plan itself. And then can you help me with the word indirectly? What's a circumstance in which the fight is about the application of the plan? Just the way you said, but it's only indirectly about that. Well, I'm not sure I can answer that question because the kinds of disputes that involve the interpretation or application of the plan are usually tied directly to the terms of the plan. That's my only concern. So the concern would be that we've got to give words meaning. The concern is that the use of the word indirectly may signal that the right way to read that phrase. I'm not saying it's correct. I just want your answer to it. One way to read it is just, it's effectively a relating to clause. And if it's read that way, then it's hard to see how your position is colorable. At least that's my concern. So if you could just address that point. No, I think the answer is that if you read indirectly so broadly that it means anything- Well, I just want to read it to mean something other than directly. Well, to use the word you used, relating to, that would effectively negate the limitation of the clause interpretation and application. But I just, for me, it would be helpful to know that that would be a misreading. I think that's- Give some content to the word indirectly. Well, I think that's a misreading because it basically eviscerates the qualifying words of applied- You're still not quite answering my question, which is I haven't heard you give content to one of the words in that clause, which is indirectly. So the argument back to you would be your reading eviscerates it because it gives no content to indirectly. What's the answer to that? I think the answer is that if the party is meant to exclude any dispute relating to the plan, they would have written it that way and we wouldn't be here. And I think- Mr. Soros, I'm no expert on ERISA law, but it seems to me on your description, that what you excluded from arbitration were ERISA-governed disputes. And whether they are directly ERISA disputes or indirectly ERISA disputes, when the issue in the end is going to be the application or interpretation of ERISA. So I think that there is a reading of indirectly to give full scope to the notion that this really goes to ERISA-type disputes. Well, the answer to that, Your Honor, I think is that an ERISA-type dispute is not a dispute over what the terms of the plan should be or changes to the plan. An ERISA-type dispute- By plan, you're confusing me. Do you mean the collective bargaining agreement? No, I mean the plan itself. A dispute concerning relating to the plan is a dispute that relates to the terms of the plan. This case does not involve a dispute over the terms of the SPD that's been put into the record. Well, if you just added the word terms up, why doesn't the dispute relating to the plan be a dispute that in some way has something to do that could affect the plan as opposed to the terms of the plan? I agree with you if it's in terms of the plan, that might be a little bit different. I guess it would- I follow everything you're saying, I just am still stuck on. It would be good if there were some example to me of an ERISA dispute about the application of ERISA that could be described as a dispute that indirectly implicates the application of ERISA that would not be, therefore, just something that just relates to the ERISA dispute, because arguably this does relate to the ERISA plan. And I think you don't deny that, which is why you say you can't read it to say that. Correct. And I think at the end of the day, the question is not necessarily whether there's a plausible reading of that clause to include everything that would relate to a plan, but whether the union's interpretation is at least a plausible one and that the exclusion clause in the arbitration agreement clause is susceptible, nearly susceptible to interpretation. Thank you. Thank you, Attorney Soros. At this time, if you could mute your audio and video, and Attorney Lee, introduce yourself on the record to begin. Thank you, Your Honors. Brian Lee from the law firm of Ogletree Deakins on behalf of Johnson Controls Security Solutions. May it please the Court, in listening to the conflict between Congress and the Union's counsel, I think the one thing that we need to agree on as the baseline is this is a contractual interpretation case. The union and the company entered into a contract, and as the Supreme Court noted in both the AT&T case and the Steel Workers v. Warner case, an agreement to arbitrate is a creature of a contract, and neither party can be to arbitrate over an issue that they didn't agree to arbitrate. What we're looking at here are the four corners of a contract. There is no need in this case to try to divine what the Mr. Lee, I think the language is pretty clear, but it goes against you, so perhaps you could start dealing with the complexities of the indirect language as to the application and interpretation of the ERISA plan. Yes, Your Honor. And why do you think the union's interpretation is simply not plausible? First of all, if we go to the actual facts that have to happen in this case, from an interpretation standpoint, we need to be aware this collective bargaining agreement does not say what the certain time is what applies here, and so this is not a situation where the collective bargaining agreement says the employer matches X, and the company is saying we will not pay it. In that case, it might be a closer argument, but here we have to look at the entire plan, not just the employer. To resolve the dispute before us, do you have to interpret the plan? Absolutely, Your Honor, because if the case moves forward, we will have to look at the plan. No, that's not what I asked. To resolve the dispute before us, between the parties right now, do you have to interpret the plan? If the case were, I'm not sure if I understand Your Honor's question. Could you say your agreement prevents you from changing the plan? You have to have the plan that was in effect on a certain date, and they say you've changed it, and you don't dispute you've changed it. You say you can change it. That's correct, Your Honor. That sounds to me like what your agreement is under the collective bargaining agreement. I would disagree with you, Your Honor. Let me give you an example. The day after you signed the collective bargaining agreement, you announced you were terminating the pension benefit plan, period. Would that be a violation of the collective bargaining agreement? That would be something that would have to be argued, just like this one would have to be directly or indirectly. I didn't ask you to interpret the word directly. I just first asked you, do you have to interpret the plan to determine the answer to the question of whether you can change the plan? Yes, because the plan... Isn't the debate about whether the agreement... I'll allow you to change the plan. If you just looked at the face of the agreement, perhaps no. Okay, so that's fine. That's step one. Sure. Do you have to apply the plan to determine whether the agreement allows you to change the plan? You would not have to apply it in that case. On those two, I'm tracking how this does not directly involve the interpretation or the application of the plan. It seems to me your argument then hinges entirely on the fact that the exclusion clause also includes the words indirectly. I take you to be saying that because of the inclusion of that word to give it content, you have to treat a fight over the meaning of the agreement that concerns how the plan would operate going forward as something that falls within the exclusion. Is that your argument? Agreed, your honor. That is the argument. Is that because there is no category of cases that could concern the interpretation or application of the plan that would only indirectly affect it, that would not involve interpretation of the agreement? Your honor, I think the answer to that is that given the language here that they refer to as indirectly and directly, we cannot define what the drafters meant. We can't, sitting here today, say they meant ERISA, they meant this, they meant that. They did an extremely broad, all-encompassing clause here that we need to look at within the four corners of the contract and to say that we should be looking to ERISA or anything else is not in the record here. There is nothing in the record here that says that the parties meant to limit this clause. I don't understand where your argument is going. You seem to be arguing you cannot refer to arbitration if there is any ambiguity about the intention of the clause. That's not the AT&T standard. The AT&T standard is if there is a plausible claim for arbitration, so perhaps you could focus on that and give us a more direct answer. So, your honor, there's a two-step process in the AT&T case and Steelworkers, and the first part is whether it can be set with positive assurance that the arbitration clause does not cover the dispute, but then they go on separately to talk about the fact that, is there an express provision that excludes the particulars from arbitration? So, at that point, we are then going away from the arbitration clause to the exclusion clause, and the exclusion clause here is very all-encompassing, and I think it's a mistake to say that when you have such a broad clause that this was somehow intended to only apply to run-of-the-mill ERISA things. That's because your argument depends on there being no case in which the word indirectly could be given content if that clause were read to apply only to disputes that did not encompass disputes about the agreement that could have an effect on the plans that application going forward, correct? Yeah, but what I would say, your honor, is that the parties certainly in drafting this could have decided we don't want anything relating to the pension agreement to arbitration, and the union's not without a remedy. The union had every right to file something in court to press its claim, so this is not a situation where the union is being deprived of any right that they had. I just want to reiterate, it's a very broad clause, and it just does not seem to make logical sense that this broad clause was meant to only prevent arbitration for these types of administrative things that ERISA talks about. That's because of the word indirectly. And that's correct, your honor, and if that were the case, the drafters simply could have put in we don't want there to be any arbitration over these ERISA types of things, and that's exactly what was talked about in the steelworkers case where there was an issue over whether or not the company had the right to contract out work, and the supreme court said all they had to do was put in a clause that said contracting work is excluded. Mr. Lee, you seem to be arguing that they should have just used the phrase ERISA, and so your argument has shifted away from the ERISA, but had put in directly and or indirectly. I think the indirectly makes the argument even stronger, but I think even without the indirect, I don't think that going over to ERISA and trying to divine and pull language out of cases saying, oh in ERISA, a certain case has used the term application and interpretation. That must have been what was in the minds of the drafters here. That's time. Let me pose an example and ask you how we should think about it. Worker has a dispute with the company, say over being fired or something like that, enters into a settlement agreement. Settlement agreement waives a lot of rights of the worker, has some ambiguity in it. The worker then turns around two years later and makes a claim for pension benefits, and everybody agrees that but for that prior settlement agreement, he would be fully entitled to pension benefits, but the company says that prior settlement agreement, we read the language in it as waiving any rights under the pension plan, and he says I don't read that. So you've got a dispute about what the prior settlement was as it affects the right to benefits. Might we think of that as a dispute that indirectly relates to the application of the pension benefit plan, and therefore it's not arbitrable? It certainly could, your honor. That is one example that could be thought of in that context. That was all I had to ask. Thank you. Thank you, your honors. Attorney Lee, please at this time mute your audio and video. Attorney Soros, you have a two-minute rebuttal. Please reintroduce yourself on the record to begin. This is Christopher Soros. I'm counsel for the appellant IBEW Local 103. I'd like to make a few points in response to the argument of my brother, Mr. Lee. He characterized the exclusion clause as extraordinarily broad or extremely broad, and it just is not. The real challenge in this case is to consider the meaning of, or what could be the meaning of, the words apply and interpret. No, no. I think, for me at least, and I think this may be in accord with at least the last question Judge Carotta asked, to me the key question is what does indirectly mean, and I have not heard you give an explanation of what it means yet. Well, I'm not sure what it means, but I think in response to your question to Mr. Lee a minute ago, I can explain what it clearly doesn't mean. You asked whether in resolving the underlying dispute one has to interpret the plan, the SPD that's in the record, and the answer is you don't. You don't have to apply the plan, and that's why this does not involve the direct interpretation or application of the plan, and you would win if that's all the exclusion clause said. It also says indirect, and I guess it would just be helpful to me that you just seem to not want to do it, to give some sense of what that word means on your view. I would have thought that you would have embraced Judge Carotta's example. I can think of other examples where you are interpreting something else, and it ultimately may indirectly affect ERISA benefits, whether chronic fatigue syndrome is in fact a recognized illness, so on and so forth. Well, Judge Carotta's question was a good question, and I think the answer is that that's a question that raises perhaps indirectly a question involving the interpretation or the application of the plan, and that's because it involves his rights under the terms. That's time, but just one last question for me. Taking Judge Carotta's question, can you distinguish that from this case? In other words, there's a case in which the dispute is over the meaning of a settlement agreement, and yet it indirectly implicates the plan. Why isn't this case just like that? It's a dispute over the meaning of the agreement that indirectly implicates the plan. Because in Judge Carotta's scenario, the underlying dispute is, the basic question is whether he has rights to a pension under the terms of the pension plan. That is the core issue. Does he get a pension under the pension plan? In this case, in contrast, the only question is, does the contract prohibit the company from changing the plan during the term of the contract? That's the only question. It has nothing to do with what rights somebody might have under the terms of the SPDs that's in the record. Just a last turn on that. In the dispute over the meaning of the settlement agreement, won't the only issue be the meaning of the settlement agreement? Not necessarily, because his rights to a pension are rights that are governed by the terms of the plan, and not necessarily the settlement agreement. Okay. Thank you, counsel. Thank you. Thank you, Your Honors. That concludes argument in this case. Attorney Soros and Attorney Lee, you should disconnect from the hearing at this time.